IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim No. 20-135 |
| | ) | Judge Ambrose |
| | ) | |
| MATTHEW MICHANOWICZ | ) | |

**THE UNITED STATES' SENTENCING MEMORANDUM**

AND NOW comes the United States of America, by its attorneys, Stephen R. Kaufman, Acting United States Attorney for the Western District of Pennsylvania, and Jessica Lieber Smolar, Assistant United States Attorney for said District, and hereby submits this Sentencing Memorandum concerning the sentencing of defendant Matthew Michanowicz. The government requests a sentence of imprisonment at the low end of the advisory sentencing guideline range of 30 to 37 months. Such a sentence will reflect the seriousness of the defendant's offense, promote respect for the law, deter others from engaging in similar conduct in the Western District of Pennsylvania, and protect the public. Moreover, such a sentence would be sufficient but not greater than necessary to meet the goals of sentencing.

**BACKGROUND**

On June 1, 2020, Pittsburgh Bureau of Police (PBP) was called to the open area of 2 PNC Plaza facing Wood Street in downtown Pittsburgh to respond to a report of a suspicious bag. PBP officers arrived and were directed by PNC security to a "military, green backpack" located on PNC property by a bicycle rack under some small trees. PBP reported they discovered canisters in the bag and a "foul odor", so they requested the Pittsburgh Bureau of Police Bomb Squad (Bomb Squad) respond to the scene. PSIR ¶ 12.

The PBP Bomb Squad responded to the scene, took custody of the bag, and examined the

contents. The contents revealed three suspected "homemade Molotov cocktails." The devices are described as "spent OC vapor grenades" which contained a fluid that had a smell similar to an ignitable liquid. The liquid was leaking out of one or more of the devices. All three devices had wicks/fuses attached to them, which were held in place by what appears to be "spray foam insulation." A sample of one of the wicks was tested by the Bomb Squad, and after touching a flame to it, it quickly ignited and burned through its length. After examination, the PBP Bomb Squad made the determination that the devices were improvised incendiary devices. On June 4, 2020, the PBP Arson Supervisor submitted this evidence to the Allegheny County Crime Laboratory for examination. PSIR ¶ 13.

PNC security also informed PBP that they had security footage of someone described as the defendant possessing the subject bag at the scene where it was recovered on May 31, 2020 and provided that footage to the PBP Intel section. On June 3, 2020, at approximately 08:30 pm, Matthew Michanowicz was located by PBP, detained and taken to the PBP headquarters for questioning. He was interviewed by ATF and PBP agents. Agents read the defendant his Miranda Rights Waiver form and the defendant verbally agreed to speak to the investigators and answer questions. PSIR ¶ 14.

The defendant indicated that he resided at 144 Republic Street, which is located on Mt. Washington in Pittsburgh, PA. The defendant stated that he frequently rides his bicycle to Pittsburgh, including the Southside area, and had done so on May 31, 2020. The defendant also stated that on May 31, 2020, he took the "Incline" down from his residence on Mt. Washington and rode his bike to Pittsburgh to look at the "aftermath" of the riots and protests. The defendant is seen on the surveillance video arriving by bicycle with a backpack at the scene where the backpack was recovered by PBP. The defendant positively identified himself as the individual

depicted in the photographs, and identified the bicycle depicted in the photographs as his. The defendant is seen in the surveillance video arriving at the bike rack on his bicycle, dismounting on the left side, removing the camouflage bag from the right side of his handlebars and carrying the bag to the right of the screen and depositing it on the brick barrier under the trees. PSIR ¶ 15.

On June 4, 2020, ATF Agents from the Pittsburgh Field Office executed a federal search warrant at the defendant's residence of 144 Republic Street, Pittsburgh, PA 15211. The search conducted by Agents revealed, all in close proximity to each other on a workbench in the garage, a bundle of fuse exhibiting the same color and characteristics of the fuses found on the previously seized destructive devices, some partially burnt fuse remnants that appear to be from the same fuse bundle, a can of spray foam insulation consistent with the type of spray foam insulation that had been applied to the exterior of all three recovered destructive devices, and a syringe emitting a strong odor consistent with an ignitable liquid. Also found in the garage were approximately 10 camouflage backpacks that were similar in size, pattern and configuration to the bag in which the destructive devices at issue were discovered. A search of the trashcan in the garage revealed retail packaging of fuses and a pair of used latex gloves that emitted a strong odor consistent with an ignitable liquid. PSIR ¶ 16.

Pittsburgh Bureau of Police Bomb Technicians examined the destructive devices and determined, based on their training and experience that these devices would have functioned as an explosive device and would have caused damage to property or people in the area where they would have been set off. The Bomb Squad rendered the devices safe by detonating them with explosives. After the detonation, at least one canister continued to burn and would not go out, burning for an additional four to five minutes before it was necessary to extinguish it by smothering

it with sand. An ATF Certified Fire Investigator assessed that the continued burning is consistent with there being an added fuel load to the device, such as an ignitable liquid. PSIR ¶ 17.

The Allegheny County Crime Laboratory tested the devices and confirmed that the fluid in the devices was, in fact, gasoline, an ignitable fluid. The Crime Lab also determined that the foam and the fuse in the devices was the same foam and fuse seized in the search of defendant's residence based on their visual properties, construction, and chemical properties. PSIR ¶ 18.

**18 U.S.C. § 3553(a)**

This Court must impose a sentence that is reasonable in light of the factors listed in 18 U.S.C. § 3553(a). Section 3553(a) directs this Court to impose a sentence that is sufficient to account for each of the relevant § 3553(a) factors but that is no longer than necessary. An analysis of the § 3553(a) factors in this case demonstrates that a sentence of imprisonment within the advisory sentencing guideline range is warranted.

**A. Nature of the Offense**

The possession of the three destructive devices and their placement in downtown Pittsburgh by defendant during a weekend of tensions and protests is particularly serious. The wrongful possession of such destructive devices is criminal and severely dangerous. See *United States v. Podolsky*, 625 F. Supp. 188, 198 (1985). Devices such as those created and placed by defendant in this case have "no purpose apart from criminal activities. It is not a device that is commonly created for legitimate purposes…[it] has no use other than as a weapon" *United States v. Ross*, 458 F.2d 798 1144, 1145-46 (1972). Likewise, the devices created and placed by defendant had no legitimate purpose and could have caused severe injury or death if ignited. The location of where defendant placed the device heightens the severity of the conduct. It was placed downtown Pittsburgh after protests occurred in the area so it can reasonably be expected that

individuals would come in contact with the devices. By placing these destructive devices downtown, defendant endangered the lives and safety of many innocent individuals.

**B. History and Characteristics of Defendant**

The history and characteristics of defendant demonstrate an individual whose prior criminal conviction occurred approximately one year prior to the offensive conduct in the instant federal case, and defendant exhibited heightened substance abuse in the year of his arrest in the instant federal case, as well as the years immediately prior to the arrest. In May 2019, defendant pled guilty to possession of a controlled substance; officers found two stamp bags on heroin on defendant's person in February 2019 (PSIR ¶ 41). Further regarding Defendant's substance abuse, defendant reported that he first began consuming alcohol at the age of 13 socially with friends and that he last used alcohol in June 2020 prior to his arrest in the instant federal case. Defendant stated that he would typically have a couple alcoholic drinks after work in the evening and would have several beers on the weekends. Defendant noted that he did not consider his drinking to be a problem, but provided that he was attending Alcoholics Anonymous classes daily from February 2019 until June 2020 (PSIR ¶ 53).

Specifically addressing heroin use, defendant provided that he began using heroin in October 2018 and would use up to 5 bags daily. Defendant reported that he attended an inpatient substance abuse treatment program in Palm Beach, Florida in February 2019. Defendant also stated that he was attending outpatient services and received vivitrol injections as recently as May 2020. Defendant noted that he has not used heroin since February 2019 (PSIR ¶ 54). Defendant's ex-wife reported during the course of the Pretrial Services Report verification that she found empty stamp bags of heroin and bottles of alcohol in the home prior to defendant's arrest in the instant federal case. Defendant indicated that his controlled substance and alcohol use may have been a

factor in the dissolution of his marriage (PSIR ¶ 55). Lastly, defendant also reported that he used marijuana in college but did not use otherwise use marijuana as an adult except for a few times in April 2020. Defendant further noted that he experimented with cocaine on a few occasions while in college (PSIR ¶ 56). In short, defendant's substance abuse began at a young age and was at its peak in the year of his arrest in the instant federal case, as well as the years immediately prior to the arrest, leading to his prior criminal conviction.

**C. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense</u>**

Congress requires that sentencing courts consider the need for the sentence imposed to reflect the seriousness of the offense. As mentioned above, the offense here is serious; the possession of three destructive devices is dangerous and has no use aside from criminal purposes. The seriousness of the offense is properly reflected in the advisory sentencing guideline range.

**D. <u>The Need for the Sentence Imposed to Promote Respect for the Law</u>**

Promotion of respect for the law is another significant goal of sentencing. Defendant has shown little to no respect for the law, which is evident by defendant's dangerous and wrongful possession of a destructive device. A sentence within the low end of the advisory guideline range will convey to the public and to defendant that wrongful possession of destructive devices is a serious federal crime and one that is not accepted in the Western District of Pennsylvania.

**E. <u>The Need for the Sentence Imposed to Provide Just Punishment</u>**

Just punishment is another factor that Congress directs courts to consider when imposing a sentence. Congress and the Sentencing Commission have determined that a just punishment under the circumstances of this case is a sentence within the low end of the advisory guideline range of 30 months to 37 months imprisonment. A sentence within that range will provide just punishment for the defendant's conduct.

**F. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct**

Adequate deterrence is, from the government's perspective, one of the most important goals in sentencing. Defendant wrongfully used a destructive device that can cause serious bodily injury or death after defendant exhibited heightened substance abuse in the year of his arrest in the instant federal case, as well as the years immediately prior to the arrest, leading to his prior criminal conviction. Although defendant only has one prior criminal conviction, it occurred in the year prior to when defendant placed three homemade destructive devices in downtown Pittsburgh. To deter further criminal conduct, a sentence within the low end of the advisory guideline range is warranted.

**G. The Need for the Sentence Imposed to Protect the Public**

Based on defendant's heightened engagement in criminal activity in recent years, there is a risk of recidivism. A sentence of imprisonment within the low end of the range of 30 months to 37 months imprisonment will protect the public from further crimes of the defendant.

**H. Kinds of Sentences Available**

Because the defendant’s total offense level is 19 and he has a criminal history category of I, the guideline imprisonment range is 30 months to 37 months. PSIR ¶ 65. Pursuant to the Plea Agreement in this matter, the government recommends a sentence within the low end of the applicable guideline range. There are no factors that would warrant a departure from the applicable sentencing guideline range.

**RESTITUTION & FORFEITURE**

Pursuant to 18 U.S.C. § 3663A and USSG § 5E1.1, restitution is not applicable in this case.

Defendant shall forfeit to the United States the three (3) destructive devices described in the Indictment. PSIR ¶ 79.

**CONCLUSION**

For all of the reasons set forth above, the Court should impose a sentence of imprisonment within the low end of the advisory guideline range of 30 months to 37 months imprisonment. Such a sentence will be sufficient, but not greater than necessary, to meet the goals of sentencing.

Respectfully submitted,

Stephen R. Kaufman
Acting United States Attorney

/s/ *Jessica Lieber Smolar*
Jessica Lieber Smolar
Assistant U.S. Attorney
PA ID No. 65406